## 12271

### PEEPLES v. SNYDER *ET AL.*

(139 S. E., 405)

1. MOTIONS—NEITHER MORTGAGEE NOR MORTGAGOR CAN CLAIM FORECLOSURE DECREE WAS NOT ANNULLED AFTER ORDER WITH THEIR CONSENT, AND FAILURE TO APPEAL FROM ORDER DENYING MOTION TO DECLARE IT NULL.—Where mortgagee, after decree of foreclosure, secured an order annulling the foreclosure with mortgagor's consent, and mortgagor failed to appeal from an order denying subsequent motion to have previous order declared a nullity, neither mortgagee nor mortgagor can be heard to say that foreclosure decree was not annulled.

2. MOTIONS—ORDER HOLDING FIRST MORTGAGEE'S FORECLOSURE AND PURCHASE DID NOT EFFECT MERGER, WITH NO APPEAL, BECAME LAW OF CASE, BINDING ON SECOND MORTGAGEE.—Where order in foreclosure proceeding held that first mortgagee's foreclosure and purchase did not effect a merger, and that second mortgagee's only remedy was by redemption, from which order there was no appeal, it became the law of the case, and was binding on second mortgagee, as well as on first mortgagee.

3. MORTGAGES—SECOND MORTGAGEE'S RIGHT TO REDEEM PROPERTY ON PAYMENT OF FIRST MORTGAGE IS SAME WHETHER ORDER ANNULLING SALE IS NULLITY.—Whether order annulling foreclosure proceeding be considered a nullity or not *held* that it would have no effect on rights of second mortgagee, since, if not a nullity, her position would be the same as if there had been no foreclosure, with right to redeem the property on payment of first mortgage.

4. MORTGAGES—EXPENDITURES BY MORTGAGEE FOR REPAIRS AND PERMANENT IMPROVEMENTS AFTER ORDER ANNULLING FORECLOSURE, HELD NOT RECOVERABLE ON REDEMPTION.—Amounts expended by first mortgagee for repairs and permanent improvements, after order annulling foreclosure decree in original cause, without any agreement as to possession of property, *held* not recoverable against either mortgagor or second mortgagee in case of redemption.

5. MORTGAGES—$35.00 PER MONTH HELD REASONABLE RENTAL VALUE OF PREMISES RETAINED BY MORTGAGEE AFTER ORDER ANNULLING FORECLOSURE.—Reasonable rental value of premises recoverable from mortgagee after order annulling foreclosure decree, *held* $35.00 per month under evidence thereon.

6. MORTGAGES—DIRECTING MORTGAGE FORECLOSURE SALE FOR ONE-FOURTH CASH AND ONE-FOURTH EACH YEAR FOR THREE YEARS HELD ERRONEOUS WITHOUT SHOWING EQUITIES WARRANTING TERMS.—Fixing terms of mortgage foreclosure sale for one-fourth cash and one-fourth each year for three years, instead of sale for cash, *held* erroneous, in absence of showing existence of equities, warranting postponement of payment of part of purchase price.

Before MANN, J., Beaufort, July, 1926. Reversed.

Action by J. D. Peeples against Grace Snyder for the foreclosure of a mortgage. From an order purporting to settle the rights of plaintiff, as assignee of first mortgage, and of Alice Niver, second mortgagee, who was not a party to original suit, and of the mortgagor, plaintiff appeals. Reversed and remanded, with directions.

*Mr. George W. Beckett,* for appellant, cites: *Plaintiff entitled to make necessary repairs:* 32 S. C., 58. *Question of jurisdiction:* 98 S. C., 183; 43 S. C., 176. *This is a case in equity:* 43 S. C., 187. *May review findings of fact as well as law:* Ar. 5, Sec. 4, Const.; 47 S. E., 187. *A Circuit Judge has no jurisdiction without consent to set aside the decree in whole or in part of another Circuit Judge between the same parties and involving the same subject matter:* 98 S. C., 183; 43 S. C., 477; 100 S. C., 87; 30 S. C., 333; Id., 614; 53 S. C., 387. *Necessary expenditures for repairs should be allowed as a credit to the party making them:* 28 Atl., 817; 16 How. Prac., 220; 22 S. C., 389; 43 S. C., 279; 23 S. C., 143; 53 N. W., 333. *"Repairs":* 22 Barb.,

260; 52 Pac., 828; *An order unappealed from becomes res adjudicata:* 101 S. C., 453.

*Messrs. DePass & DePass,* for respondent, cite: *Mortgage lien extinguished by foreclosure sale confirmed:* 40 U. S. App., 233; 76 Fed., 16. *An attorney's mistake is not such a mistake as would warrant a Court to relieve from judgment under Sec. 437, Code Civ. Proc.:* 47 S. C., 393; 14 S. C., 331; 36 S. C., 582; 16 S. C., 617; 77 S. C., 901. *A judgment may be valid between the parties and yet void as to third parties:* 17 S. C., 446; 41 S. C., 74; 17 S. C., 41.

September 16, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This appeal is from an order of his Honor, Judge Mann, purporting to settle the rights of an assignee of the first mortgage of the land in question, who became the purchaser of the land at foreclosure sale, of a second mortgagee who was not a party to the original suit for foreclosure, and of the mortgagor.

The facts are quite complicated, but may be understood, we hope, from the following statement: One Frank Whitney was the owner of a certain house and lot in the Town of Bluffton, in Beaufort County. On March 22, 1920, he sold and conveyed the property to the defendant Grace Snyder, for $8,500, payable $2,000 cash, $1,000 on March 15th of each of the years 1921 to 1926 (both inclusive), and $500 on March 15, 1927, with interest at 6 per cent. upon the deferred payments from date. The cash payment of $2,000 was made, and a bond executed for the deferred payments, secured by a mortgage of the premises. The mortgage was recorded on May 17, 1920.

On March 15, 1921, when the first of the deferred payments fell due, the mortgagor, Grace Snyder, being unable to meet it, borrowed from the defendant Alice Niver, $1,197, with which to make the payment and interest. This

loan, upon a bond, was secured by a mortgage upon the house and lot, junior in rank to the Whitney mortgage above referred to. It was recorded on March 18, 1921.

At some time in the year 1923 (the exact date not appearing), Whitney, the senior mortgagee, instituted proceedings against Grace Snyder, for the foreclosure of his mortgage. The junior mortgagee, the defendant Alice Niver, was not made a party defendant to that action, although her mortgage had been duly recorded; manifestly an oversight.

Later in the same year, while the Whitney foreclosure proceedings were pending, the plaintiff Peeples purchased for value the Whitney bond and mortgage. They were duly assigned to him. By order of Court, Peeples was substituted for Whitney as plaintiff in the foreclosure proceedings, and as such prosecuted the action to a judgment of foreclosure and sale.

Still later in the same year (1923), pursuant to the decree of foreclosure, the sale was had, and the property was bid off by Peeples at $1,000. The purchase price was credited upon the judgment of Peeples against Grace Snyder, and the clerk of Court, who made the sale, executed, and delivered to Peeples a deed for the property and placed him in possession. On October 18, 1923, the sale was confirmed by a formal order of Court upon the coming in of the report of sales. Thereafter followed the complications and woes which resulted from the failure to make Alice Niver, the junior mortgagee, a party defendant to the foreclosure proceedings instituted by Whitney against Grace Snyder.

On April 5, 1924, Alice Niver, the junior mortgagee, instituted foreclosure proceedings against Grace Snyder and Peeples, upon the bond and mortgage executed to her on March 15, 1921, above referred to. In addition to the usual allegations supporting her demand for foreclosure, she alleged that, by his purchase of the property at the foreclosure sale in 1923, Peeples became the owner of the legal title to

the property; that the mortgage which he had obtained by assignment from Whitney had thereby become merged in the legal title; and that the premises were subject to her mortgage, which, by the merger, became the first and only mortgage upon the property. Peeples made answer to the complaint, denying the asserted merger, setting up the Whitney mortgage as a first lien, and asking foreclosure thereof.

The proceeding by Alice Niver seems to have thrown a panic into the Peeples' camp, creating a fear that the purchase of the property by Peeples at the foreclosure sale, and the execution and confirmation of title in him, resulted in a merger of the Whitney mortgage, owned by Peeples, in the legal title acquired by him, and a consequent extinguishment of the mortgage, leaving the Niver mortgage as the first lien upon the property.

The fear was entirely groundless. The first mortgagee had the *legal right* to foreclose his mortgage without making the second mortgagee a party to the action. While the second mortgagee, under the circumstances, was a *proper* party, she was not a *necessary* party; and however expedient it may have been, and was, to have made her a party, as this case has demonstrated, in order that all questions might be determined in the one action, the omission did not affect the validity of the foreclosure proceedings; it only affected the *effectiveness* of it, leaving open, undetermined, the rights of the second mortgagee.

As a matter of course Alice Niver, the junior mortgagee, not having been made a party to the foreclosure suit, was not in the slightest degree affected by the adjudication in that case, and, after the sale, she had the same rights as she had before, namely, to proceed against what is perhaps inaccurately termed the mortgagor's *equity of redemption,* which would not be made available to her without providing for that which incumbered it, the first mortgage.

All that Peeples had to do was to sit steady and allow the Niver foreclosure proceeding to run its course. It would

have eventuated in a decree either (1) allowing Alice Niver to exercise the mortgagor's equity of redemption, by paying off the first mortgage and taking the property, or (2) directing a resale of the property, the proceeds of sale being applicable to the first mortgage, and the remainder to the second, or (3) directing a resale of the property at an upset price of the amount of the first mortgage, applicable to it, and the excess to the second mortgage.

Peeples and his attorney, however, did not take that view of the situation, and the worthy counsel, unduly flustered perhaps by what appeared a great oversight, needlessly so, conceived that it was necessary to unwind the ball of yarn from the beginning, in order to escape the threatened dread merger. Accordingly, after answering the Niver complaint, it appears, counsel procured an order from his Honor, Judge Townsend, in the original foreclosure suit of Whitney against Grace Snyder, dated April 10, 1924, consented to, naturally, by counsel for Grace Snyder, annulling the decree of foreclosure, setting aside the sale, requiring Peeples to surrender to the clerk of Court for cancellation the deed which he had received; that the original proceeding be amended by making Alice Niver, the junior mortgagee, a party defendant; and that the amended summons and complaint be served upon her by publication; all of which appears to have been complied with.

The matter then came up before his Honor, Judge Wilson, at the March term, 1925. Counsel for Grace Snyder made a motion to set aside the order of his Honor, Judge Townsend, of April 10, 1924, above referred to, annulling the judgment of foreclosure and sale and so forth. The same counsel, representing Alice Niver, also moved in her behalf to set aside said order so far as it directed service by publication upon her, and the publication as insufficient to bring her before the Court. Both motions were overruled; his Honor, Judge Wilson, in an order dated April 22, 1925, holding that his Honor Judge Townsend's order was en-

tirely proper, and that the service by publication upon Alice Niver was sufficient. *No appeal appears to have been taken from this order.*

At the same time, upon an agreed statement of facts, which does not appear in the record, counsel for Alice Niver asked the Court to hold that the purchase by Peeples, at the foreclosure sale, constituted a merger of the Whitney mortgage with the legal title obtained by Peeples. His Honor declined to so hold; on the contrary, he held in a separate order dated April 22, 1925, that "in the case at bar there was no merger and the first mortgage is still open and to the extent of the deficiency judgment unsatisfied." *From this portion of his Honor's order there is no appeal.*

At the same time counsel for Peeples moved to consolidate the case of Peeples (by substitution), against Grace Snyder, with that of Alice Niver against Grace Snyder and T. D. Peeples. This motion was granted, *and from it there is no appeal.*

The order of his Honor, Judge Wilson, of April 22, 1925, further referred the consolidated cases to a special master, *"to hear and determine the facts* with all due speed, and to report back to this Court as soon as practicable with his findings and recommendations." On August 24, 1925, the special master filed his report, in which he made the following findings and recommendations:

   (1) That there was due upon the Whitney mortgage:

      Upon principal ....................$  5,523.00
      Interest upon $4,500 from September 15,
      ·1921, at 6 per cent. up to the respective
      dates of maturity of the notes and 7 per
      cent. thereafter, up to August 20, 1925   1,016.64

         Total ....................$  6,539.64
      (stated in the report as $6.516.64, an
        error of $23)

Attorney's fees 10 per cent. ..........          653.96

Grand total ...............$   7,193.60

(2) That, after Peeples took possession under his deed from the clerk, he expended $1,203.91 in improvements and in repairing the roof and the sills, "which sum he is entitled to recover."

(3) That during his occupancy, Peeples paid the taxes upon the property for the years 1922, 1923, and 1924, amounting to $231.50, and insurance $57.50, aggregating $2.89, and that "he is entitled to recover the same together with 10 per cent. as attorney's fees."

(4) That the total amount recoverable by Peeples is:

On bond and mortgage ....          $7,193.60
On item 2 above ..........$. 1,203.91
On item 3 above ..........   289.00

$ 1,492.91
10 per cent. attorney's fee ..   149.29     1,642.20

$8,835.80

(stated in the report as $8,810.50, an error of $23.30)

(5) That there was due upon the bond and mortgage of Mrs. Agnes (Alice?) Niver:

Principal .........................$   1,147.00
Interest ..........................   406.57

$   1,553.57
Attorney's fees 10 per cent. ..........   156.36

$   1,708.93

(The principal of the bond appears in the record to have been $1,197 and not $1,147, as stated in the report. If the

larger amount be correct, there is an error of $50 here, plus the interest on $50.)

(6) That $35 per month is a reasonable rental for the property, for which Peeples is due to account to Grace Snyder from the time he went into possession in October, 1923, amounting as of August 20, 1925, to $793.33, reducing to that extent the amount as above in his favor. .

(7) That Peeples was entitled to recover "the full amount of the mortgage debt with interest and attorney's fees as heretofore stated."

(It may be stated in passing that the liability of Peeples to Grace Snyder for rent of the premises was based upon the fact of the annulment of the decree of sale and of the title which Peeples had received from the clerk; the effect of which annulment was to revest the title in the mortgagor, Grace Snyder, Peeples consequently, in the meantime being in possession of Grace Snyder's property, without warrant by title, contract, or license.)

To this report the defendants Grace Snyder and Alice Niver, by their attorneys, Messrs. DePass & DePass, filed the following exceptions:

"(1) That said referee erred in finding and holding that Grace Snyder was only entitled to rents at the rate of $35 per month; the error being that she was entitled to rent at the highest rental value, which the testimony showed $75 per month.

"(2) That the said referee erred in holding that J. D. Peeples was entitled to recover money expended by him for repairs, protection, and upkeep of the property; said error being that said finding involved an issue of law, and said referee was only authorized to find the facts."

It will be observed that the exceptions do not bring in question the report of the special master: (1) Stating the amount due upon the Whitney (Peeples) bond and mortgage as $6,516.64, plus 10 per cent. attorney's fees; or (2) stating the amounts expended by Peeples for improvements,

repairs, taxes, and insurance, aggregating $1,492.91, plus 10 per cent. attorney's fees; or (3) that Peeples was entitled to recover the full amount of the mortgage debt, with interest and attorney's fees.

They assign error only in respect to the allowance of $35 per month, as the rental value of the property, instead of $75; and the finding that Peeples was entitled to reimbursement to the extent of the amounts expended by him for repairs, taxes, and insurance.

The matter then came on to be heard by his Honor, Judge Mann, upon the report of the master and the above exceptions. He filed a decree, dated July 3, 1926, in which he held: (1) That the lien of the plaintiff's mortgage, assigned to him by Whitney, was extinguished by the foreclosure of the same, the sale of the property thereunder, the delivery of the deed, and possession of the property, and the confirmation of the sale by the Court, resulting in the limitation of the plaintiff's remedy to a simple judgment against Grace Snyder for the amount of his debt, and the advancement of Alice Niver to the position of a senior lienee; (2) that the plaintiff is not entitled to be reimbursed out of the proceeds of the resale for the amounts expended by him in improvements, repairs, insurance, and taxes while he continued in the possession of the property; (3) that, in an accounting between Peeples and Grace Snyder, Peeples is accountable to her for $35 per month rental from October 15, 1923, when he took possession under his deed, to April 10, 1925 (1924?), the date of Judge Townsend's order unraveling the tangled skein, and $75 per month from the date of said order until he may surrender possession to Grace Snyder; (4) that Alice Niver was entitled to judgment against Grace Snyder for $1,708.93, with interest thereon from August 24, 1925, at 8 per cent. per annum, amounting at the time (July 3, 1926) to $1,782.98; (5) that upon the failure of Grace Snyder to pay the amount of the Niver mortgage by May 1, 1926 ([?] the order is dated *July 3,*

*1926*), the premises be sold for one-fourth cash, the remainder in three equal annual installments, with interest.

The decree then provides:

"That out of the proceeds of said sale the clerk of Court do first pay the costs and expenses of this action, and all taxes due upon said property, and that he next do pay to the defendant Alice Niver, or her attorneys of record, the amount of her debt, as herein ascertained, together with interest, and her costs and disbursements, and that he next do pay to the plaintiff, J. D. Peeples, subject to any claim that might be set up by the defendant Grace Snyder for homestead, if same be allowed, the judgment of said plaintiff, as hereinafter ascertained, on his bond executed by Grace Snyder, to Frank Whitney, and assigned for value to J. D. Peeples, after deducting from said judgment the amount of rent due by J. D. Peeples to Grace Snyder in accordance with the further order herein, and that the surplus, if any, be paid to the defendant Grace Snyder, or her attorneys of record."

And also:

"That the plaintiff, J. D. Peeples, as assignee of the bond of Grace Snyder to Frank Whitney, dated the 22d day of May, 1920, have judgment against the defendant Grace Snyder for the sum of $6,516.64, principal and interest due up to the date of the special master's report, August 20, 1925, plus an attorney's fee for plaintiff's attorney of 10 per cent. of said amount, making a total of $7,168.30, less a credit due thereon of rent due by J. D. Peeples to Grace Snyder for the time he has had possession of the premises hereinafter described, as follows: Rent at the rate of $35 per month from the 15th day of October, 1923, together with interest thereon at the rate of 7 per cent. per annum on each month's rent from maturity, to April 10, 1925, amounting to $703.80 and rent from April 10, 1925, to date, April 10, 1926, at the rate of $75 per month, together with interest from maturity of each month's rent at the rate of 7

per cent. per annum to April 10, 1926, amounting to $928.-71, total rent to April 10, 1926, $1,632.51, from which rent should be deducted the taxes paid by J. D. Peeples for years 1922, 1923, 1924, amounting to $231.50, and amounting to $77.50, leaving a balance to be credited on the judgment on the bond against Grace Snyder of $1,343.51, thereby reducing said judgment by said credits to the sum of $5,-825.79, with interest from August 20, 1925."

From this decree the plaintiff has appealed, raising in the main the following questions:

(1) The correctness of the Circuit decree in holding that the prior lien of the Whitney mortgage was extinguished by the merger of the mortgage in the title received by Peeples at the foreclosure sale, and the consequent advancement of the lien of the Niver mortgage to the position of priority.

(2) The denial of the claim of Peeples to include in his mortgage claim the amounts expended by him, while he was in possession, in improvements, repairs, taxes, and insurance.

(3) The liability of Peeples to Grace Snyder for the rental value of the property during his occupancy.

(4) The terms of the sale.

I. As to the first question: There are several reasons why the decree of his Honor, Judge Mann, cannot be sustained in this particular:

(a) Upon motion of the plaintiff Peeples and with the consent of defendant Snyder, Judge Townsend passed an order annulling the foreclosure decree in the original cause. Subsequently, Grace Snyder made a motion before Judge Wilson to have Judge Townsend's order declared a nullity, but Judge Wilson overruled the motion in an order from which there was no appeal. Consequently, neither Peeples nor Grace Snyder can be heard to say that the foreclosure decree was not annulled.

The defendant Alice Niver was made a party to the

original cause and the summons and complaint were duly served upon her. In the cause in which she herself was plaintiff, the second cause, she claimed that the mortgage held by Peeples had merged with the legal title which he acquired at the foreclosure sale in the original cause, rendering the premises subject only to her mortgage, which by virtue of the merger had become the first mortgage. The answer of Peeples denied this contention and the issue was put squarely up to Judge Wilson. With a clear understanding of the point involved, Judge Wilson said that:

"If there is no merger the only remedy for the second mortgagee is the one she (Alice Niver) would have had if there had been no foreclosure proceeding, which would be by redeeming the property from the first mortgage and foreclosing both mortgages or foreclosing against the equity of redemption."

He then held—correctly, we think—that there was no merger, and, continuing, said:

"This brings me to the question of what rights the plaintiff in this action has, if any, as against J. D. Peeples, the holder of the first mortgage. I am of the opinion that, since she was not a party to the foreclosure proceedings, she is not bound by the decree therein and would still have the privilege of redeeming the property in order to subject it to the lien of her second mortgage, as well as that of the first."

The order definitely fixed the mutual rights and priorities of the holders of the two mortgages, holding, in effect, that the Peeples mortgage constituted the first lien and the Niver mortgage the second lien on the premises. Alice Niver's rights and remedies were held to be just what they would have been if there had been no foreclosure proceeding. As there was no appeal from this order, it is the law of the case and is binding on Alice Niver, as well as on Peeples.

In the same order Judge Wilson directed that the original suit and the Niver suit be consolidated, and referred the causes when so consolidated to E. B. Rodgers, clerk of Court, as special master. The issue of merger having been settled by the decree of his Honor, Judge Wilson, of April 22, 1925, as well as that of the priority of the plaintiff's mortgage, the special master reported the amount which the plaintiff was entitled to recover, which necessarily meant that upon a resale the proceeds were applicable to the plaintiff's mortgage first.

The only exceptions which the defendants took to that report involved the questions whether the plaintiff was entitled to the reimbursement for the sums expended by him in repairs, improvements, taxes, and insurance, and the amount of rentals for which the plaintiff was accountable to Grace Snyder. The issue of merger of the plaintiff's mortgage in his title was not and could not have been before the Judge, for the reason that it had already been settled by the order of his Honor, Judge Wilson, and for the further reason that it had not and could not have been raised by exceptions to the master's report.

(b) The defendant Alice Niver contends that she was not a party to the proceeding which culminated in the order of his Honor, Judge Townsend, annulling the first foreclosure proceeding; that, while Grace Snyder may be bound by that order, she is not, and that she is entitled to a consideration of the matter as if no such order had been passed. We do not think that it makes a particle of difference, so far as Alice Niver is concerned, whether that order be considered a nullity or not. If a nullity, the foreclosure, the sale, and the title stand in force, and under these circumstances the only right which Alice Niver would have would be to redeem the property upon payment of the first mortgage. If not a nullity, Alice Niver's position would be the same as if there had been no foreclosure, and

her right would be.the same, to redeem the property upon payment of the first mortgage.

II. As to the second question: The record shows that the expenditures by Peeples for repairs were made by him during the latter part of 1924 and the first part of 1925, after Judge Townsend, upon Peeples' motion, had passed an order, dated April 10, 1924, annulling the foreclosure decree in the original cause. When this order, the effect of which cannot be avoided by Peeples, was passed, Grace Snyder became at once entitled to possession of the premises. The record does not show that there was any agreement between Grace Snyder and Peeples as to the possession of the property after the passing of Judge Townsend's order, and in the absence of such agreement Peeples had no such estate in the premises as would warrant his recovery from Mrs. Snyder, in case of her redemption of the property, of any amount he might have expended for repairs. *A fortiori,* he could not recover any amount he might have expended for permanent improvement; such amount being shown by the record to be about two thirds of the total sum expended. It follows that such expenditures by Peeples should not be allowed as a charge against Alice Niver, the junior mortgagee, should she exercise her right of redemption.

III. As to the third question: The appellant has raised no issue as to his liability for the rental value of the property after the order of Judge Townsend of April 10, 1925, as reported by the master, but assigns error in the decree of Judge Mann in reference thereto.

In his decree Judge Mann held that Peeples was chargeable with rent at the rate of $35 per month from the 15th day of October, 1923, to the 10th day of April, 1925 (1924), the date of Judge Townsend's order, and from April 10, 1925 (1924), until he should surrender possession of the premises to Grace Snyder, at the rate of $75 per month, the highest rental value, basing

the distinction upon his holding that after April 10, 1925 (1924), Peeples was wrongfully and willfully retaining possession from Mrs. Snyder. The special master found that $35 per month was a reasonable rental value for the premises. The testimony does not sustain a holding that $75 per month was the highest rental value of the premises alone; the testimony on that point being that the property was rented "fully furnished and with boarders to Dr. R. K. Smith for the summer months only at $75 a month, but that Smith never paid the rent." Under this and other testimony the special master found that $35 per month was a reasonable rental for the premises alone, and there was no finding as to the highest rental value. We therefore conclude that the rental value of the premises should be at the rate of $35 per month from October 15, 1923.

IV. As to the fourth question: The decree of his Honor, Judge Mann, directs the sale upon terms of one-fourth cash and one-fourth each year for three years, instead of a sale for cash. There is nothing in the record to show the existence of any equities which would warrant postponement of payment of a part of the purchase price, and we think that there was error in fixing such terms.

The decree of his Honor, Judge Mann, must be reversed, and the case remanded to the Circuit Court, with directions: (1) To order a resale of the property upon such terms as the Court may deem proper; (2) to provide that the proceeds of sale be applied to the payment of the costs and expenses of the two actions and all taxes which have been paid, are now due, or may constitute a lien at the time of the sale; (3) to provide that out of the remainder the master shall pay to the plaintiff the amount which may be ascertained to be unpaid upon the Whitney mortgage, with interest up to the day of sale and 10 per cent. attorney's fees, plus the amount expended by the plaintiff for insurance and taxes up to the time of its sale, less the amount of rental ascertained to be due the defendant Grace Snyder, without attorney's fees;

(4) to provide that out of the remainder the master pay to the defendant Alice Niver the amount ascertained to be due upon the bond and mortgage held by her, with 10 per cent. attorney's fees; (5) that the defendant Alice Niver may have the option of an order, instead of a resale, allowing her to redeem the property upon the payment of the amount ascertained to be due to the plaintiff as provided in subdivision 3 above, or directing a resale at the upset price of said amount.

And it is so ordered as the judgment of this Court.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE PURDY concur.